2021 IL App (1st) 171453-U

No. 1-17-1453

Order filed December 17, 2021

SIXTH DIVISION

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 94 CR 4431 |
| | ) | |
| SCOTT CHAMBERS, | ) | Honorable |
| | ) | Vincent M. Gaughan, |
| Defendant-Appellant. | ) | Judge presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice Pierce and Justice Oden Johnson concurred in the judgment.
Justice Oden Johnson also specially concurred.

**ORDER**

¶ 1     *Held*: Trial court exceeded mandate on remand by resentencing defendant on all offenses when this court found only natural life sentences for first degree murder to be erroneous, so that original sentences must be restored for all other offenses. The resulting 60-year aggregate sentence was not unconstitutional in light of defendant's youth as he is eligible for day-for-day good conduct credit that provides him a meaningful opportunity for release short of a 40-year *de facto* life sentence.

¶ 2     Following a jury trial, defendant Scott Chambers was convicted of two counts of first degree murder, two counts of armed robbery, and one count each of aggravated criminal sexual assault and aggravated vehicular hijacking. He was sentenced concurrently to two terms of natural

life imprisonment for the murders, three 25-year terms for the armed robbery and sexual assault offenses, and a 15-year term for the hijacking offense. Defendant committed his offenses in 1994 when he was 17 years old. His convictions and sentences were affirmed on direct appeal, as was the dismissal of his 2000 successive postconviction petition. *People v. Chambers*, No. 1-96-0501 (1998); No. 1-02-3031 (2003) (unpublished orders under Supreme Court Rule 23). On appeal from a 2010 denial of leave to file another successive petition, we declined to consider his challenge to his mandatory natural life sentence under *Miller v. Alabama*, 567 U.S. 460 (2012), because it was not raised in his petition. *People v. Chambers*, 2013 IL App (1st) 100575, ¶ 42. Our supreme court remanded for us to reconsider in light of *People v. Davis*, 2014 IL 115595. *People v. Chambers*, No. 116731 (2015). We then vacated defendant's sentence and remanded for resentencing because the trial court was not able to take his youth into account in crafting an appropriate sentence due to the mandatory nature of the natural life sentences. *People v. Chambers*, 2015 IL App (1st) 100575-UB, ¶¶ 36, 38. On remand, the trial court resentenced defendant to concurrent 60-year prison terms for the murders, a 25-year term for the sexual assault, and concurrent 7-year terms for the armed robbery and hijacking offenses, with consecutive sentencing between the murders, sexual assault, and other offenses so his aggregate sentence is 92 years' imprisonment.

¶ 3    Defendant now appeals from that order, contending that the court (1) exceeded its authority under our mandate by resentencing him on all convictions rather than just the two murder convictions, as we found only the natural life sentences for the murders to be improper, (2) imposed a *de facto* life sentence that did not comply with *Miller* and its progeny by giving meaningful consideration to his youth and attendant characteristics, and (3) demonstrated vindictiveness by imposing consecutive sentences. The State concedes that the court exceeded its mandate so that

the original concurrent sentences for all of defendant's convictions other than murder should be reinstated. However, the State contends that the resulting aggregate 60-year prison sentence is not a *de facto* life sentence because postsentencing credit for good conduct will give him a meaningful opportunity for release before he serves 40 years.

¶ 4      For the reasons stated below, we modify the sentencing order so that defendant receives concurrent sentences of 60 years each for the murders and, as originally sentenced, three 25-year terms for the armed robbery and sexual assault offenses and a 15-year term for the hijacking offense. We otherwise affirm the judgment of the trial court.

¶ 5                                    I. JURISDICTION

¶ 6      The trial court resentenced defendant on May 10, 2017, this court having mandated a resentencing in 2015. The court denied reconsideration of its sentence on May 18, 2017, and defendant filed his notice of appeal the same day. Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6), and Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013) and Rule 606 (eff. Mar. 12, 2021) governing appeals from a final judgment of conviction in a criminal case.

¶ 7                                    II. BACKGROUND

¶ 8      Defendant was charged with various offenses including first degree murder, armed robbery, aggravated criminal sexual assault, and aggravated vehicular hijacking against Reginald Wilson and Felicia Hudson Lewis on or about January 13, 1994.[1]

---

[1] Codefendants Anthony Brown, Stanley Hamelin, Carl Williams, and Zarice Johnson were charged with the same offenses. We are not concerned here with the proceedings in their cases.

¶ 9     In defendant's late 1995 trial, a jury found him guilty of two counts of first degree murder, two counts of armed robbery, and one count each of aggravated criminal sexual assault and aggravated vehicular hijacking. The court sentenced defendant in January 1996 to concurrent prison terms of natural life imprisonment for first degree murder, 25 years for armed robbery and aggravated criminal sexual assault, and 15 years for aggravated criminal sexual assault. Defendant's natural life sentence was mandatory. 730 ILCS 5/5-8-1(a)(1)(c)(ii), (v) (West 1994).

¶ 10    On direct appeal, defendant raised a *corpus delicti* challenge to his aggravated criminal sexual assault conviction and an ineffective assistance of counsel claim for admitting his guilt during opening statements. As noted above, we affirmed. *Chambers*, No. 1-96-0501.

¶ 11    Defendant filed a *pro se* postconviction petition in 1999 arguing that his right to a speedy trial was violated and that trial counsel was ineffective for not seeking dismissal of his case on that basis. The circuit court summarily dismissed the petition, which defendant did not appeal.

¶ 12    In 2000, defendant filed a second postconviction petition raising a claim based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The circuit court dismissed the petition in 2002 and we affirmed on appeal. *Chambers*, No. 1-02-3031.

¶ 13    In 2009, defendant filed a petition for relief from judgment, and the circuit court notified him it intended to recharacterize it as a successive postconviction petition. Defendant elected to amend his petition and alleged ineffective assistance of counsel for not challenging his natural life sentence as unconstitutional. In particular, he claimed that section 5-8-1(a)(1)(b) (730 ILCS 5/5-8-1(a)(1)(b) (West 1994)) was unconstitutional though he was not sentenced pursuant thereto. The circuit court denied defendant leave to file a successive petition in 2010, also fining him $105.00 and instructing the circuit court clerk not to accept his filings until the fine was fully paid.

¶ 14    On appeal, defendant added a claim that his sentence was improper under *Miller* because he was sentenced to natural life imprisonment for offenses committed while still a minor. We affirmed the disposition of his petition except we vacated the provision barring further filings. *Chambers*, 2013 IL App (1st) 100575, ¶¶ 23-31. We declined to consider defendant's *Miller* claim because he had not raised the issue in his postconviction petition. *Id.* ¶ 42.

¶ 15    However, after our supreme court instructed us to reconsider in light of *Davis* (*Chambers*, No. 116731 (2015)), we vacated defendant's sentence and remanded for resentencing because the trial court was unable to take his youth into account in its sentencing due to the mandatory nature of the natural life sentences. *Chambers*, 2015 IL App (1st) 100575-UB, ¶¶ 36, 38.

¶ 16    On remand, the trial court held a resentencing hearing in December 2016 with evidence and multiple witnesses in aggravation and mitigation. In May 2017, after noting the requirements of and relevant factors under *Miller* and its progeny, the court found that defendant was not immature or impetuous at the time of his offenses. Regarding rehabilitative potential, the court found that he "demonstrated some positive attitudes while in prison" but also had "serious misconduct incidents." The court sentenced defendant to concurrent 60-year prison terms for the murders, a 25-year term for the sexual assault, and concurrent 7-year terms for the armed robbery and hijacking offenses, with consecutive sentencing between the murders, sexual assault, and other offenses so his aggregate sentence is 92 years' imprisonment. It expressly found that consecutive sentencing was necessary to protect the public. It denied reconsideration of its sentence, rejecting defense arguments that it had imposed a *de facto* life sentence and had not meaningfully considered the mitigation evidence. This appeal followed.

¶ 17                                III. ANALYSIS

¶ 18    On appeal, defendant contends that the trial court (1) exceeded its authority under our mandate by resentencing him on all convictions rather than just the two murder convictions, as we found only the natural life sentences improper, (2) imposed a *de facto* life sentence contrary to *Miller* and its progeny by not giving meaningful consideration to his youth and attendant characteristics, and (3) showed vindictiveness by imposing consecutive sentences.

¶ 19    The State concedes that the court exceeded its mandate so that the original concurrent sentences for all convictions other than murder should be reinstated. However, the State contends that the resulting aggregate 60-year prison sentence is not a *de facto* life sentence because postsentencing credit for good conduct will provide him a meaningful opportunity for release before he has served 40 years.

¶ 20                                A. Mandate

¶ 21    We agree with the parties that the trial court exceeded its authority under our mandate when it resentenced defendant on all offenses. On remand, the trial court is vested with jurisdiction only to take action that complies with the reviewing court's mandate. *People v. Hill*, 2021 IL App (1st) 131973-B, ¶ 20. While our order did not expressly direct the trial court to resentence defendant only on his murder offenses (*Chambers*, 2015 IL App (1st) 100575-UB, ¶¶ 38, 40), we found only the mandatory natural life sentences for first degree murder to be erroneous. *Id.* ¶ 36.

¶ 22    Therefore, the portion of the resentencing order that was authorized by our mandate – the new sentences for first degree murder – stands. The portion that was not – the sentences for the other offenses – is vacated and the corresponding portion of the original sentencing order is reinstated. In other words, we shall modify the sentencing order to be consistent with the

resentencing order insofar as the trial court had authority to issue it and the original sentencing order insofar as our mandate did not authorize resentencing. As modified, defendant shall have concurrent sentences of 60 years each for the first degree murders, 25 years each for aggravated criminal sexual assault and two armed robberies, and 15 years for aggravated vehicular hijacking.

¶ 23                                    B. *Miller* and its Progeny

¶ 24    Therefore, we are effectively left with an aggregate sentence of 60 years imprisonment. Defendant contends that this sentence is improper under *Miller* and its progeny because it is a *de facto* life sentence but his youth and attendant characteristics were not properly accounted for in resentencing. The State contends that defendant did not receive a *de facto* life sentence because he is eligible for day-for-day good conduct credit that gives him a meaningful opportunity for release before the 40-year threshold for *de facto* life sentences.

¶ 25    In *Miller*, the United States Supreme Court held that a sentence of natural life imprisonment or life without parole imposed mandatorily upon a person who was a minor at the time of his or her homicide offense violates the eighth amendment because mitigating factors relating to youth could not be considered in imposing the sentence. *Miller*, 567 U.S. at 489. In *People v. Holman*, 2017 IL 120655, ¶ 40, our supreme court held that "[l]ife sentences, whether mandatory or discretionary, for juvenile defendants are disproportionate and violate the eighth amendment, unless the trial court considers youth and its attendant characteristics." In *People v. Buffer*, 2019 IL 122327, ¶¶ 30-33, our supreme court determined that a prison sentence longer than 40 years is a *de facto* life sentence. *Id*. ¶¶ 34-41. The *Buffer* "defendant committed an offense, at age 16, that subjected him to a legislatively mandated minimum sentence of 45 years and for which he received

a sentence of 50 years. Because defendant's sentence was greater than 40 years, we conclude that defendant received a *de facto* life sentence." *Id*. ¶ 42.

¶ 26    When a defendant who was a minor at the time of his offenses receives a life sentence, including a *de facto* life sentence under *Buffer*, a reviewing court must determine whether the trial court "failed to consider defendant's youth and its attendant characteristics in imposing that sentence." *Id*. Our supreme court has held that *Miller* mandates that a trial court consider the defendant's youth and related characteristics as mitigating circumstances before imposing a life sentence. *Holman*, 2017 IL 120655, ¶ 37 (citing *Miller*, 567 U.S. at 483, 489). A minor defendant "may be sentenced to life imprisonment without parole, but only if the trial court determines that the defendant's conduct showed irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation." *Id.* ¶ 46. While an express finding of incorrigibility is not required, "a trial court must consider some variant of the *Miller* factors before imposing a life sentence without the possibility of parole." *Id.* ¶ 43. Those factors include:

> "(1) the juvenile defendant's chronological age at the time of the offense and any evidence of his particular immaturity, impetuosity, and failure to appreciate risks and consequences; (2) the juvenile defendant's family and home environment; (3) the juvenile defendant's degree of participation in the homicide and any evidence of familial or peer pressure that may have affected him; (4) the juvenile defendant's incompetence, including his inability to deal with police officers or prosecutors and his incapacity to assist his own attorneys; and (5) the juvenile defendant's prospects for rehabilitation." *Id.* ¶ 46 (citing *Miller*, 567 U.S. at 477-78).

Our inquiry into the *Miller* factors is strictly retrospective: "the only evidence that matters is evidence of the defendant's youth and its attendant characteristics at the time of sentencing. Whether such evidence exists depends upon the state of the record in each case." *Id.* ¶ 47.

¶ 27                                   C. *People v. Dorsey*

¶ 28    As a threshold matter, defendant is indeed subject to day-for-day good conduct credit, as the statute in effect when he committed his offenses in January 1994 provided for credit at that rate for all prison sentences other than natural life. 730 ILCS 5/3-6-3(a)(2) (West 1994).

¶ 29    Our supreme court recently held "that good-conduct credit is relevant and that a sentence imposed pursuant to a statutory scheme that affords a juvenile an opportunity to be released from prison after serving 40 years or less of the term imposed does not constitute a *de facto* life sentence." *People v. Dorsey*, 2021 IL 123010, ¶ 1. The supreme court acknowledged multiple decisions by this court holding otherwise. *Id.* ¶ 48. However, it found that a sentencing scheme need only provide a juvenile " 'some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation' before the juvenile reaches *Buffer*'s line drawn at more than 40 years." *Id.* (quoting *Miller*, 567 U.S. at 479).

¶ 30    While the trial court in *Dorsey* imposed a prison sentence in excess of 40 years, "it is the legislature, through the statutory scheme that it has enacted, that determines how much of that sentence the person must serve. And it has offered the opportunity for early release" in its mandatory good conduct credit system. *Id.* ¶ 50. "This day-for-day credit scheme is designed to encourage rehabilitation and enable an offender to be released after he serves half of the determinate sentence. It allows a predictable, fairly accurate assessment at the time of sentencing of the ultimate length of imprisonment." *Id.* ¶ 51. "Thus, an offender sentenced under the statutory

scheme providing for day-for-day credit—who conforms his conduct to the prison rules—can demonstrate growth and rehabilitation, thereby procuring his own release after serving half of the judicially imposed prison term." *Id*.

> "[I]t is in a defendant's power to shorten his sentence by earning good-conduct credit and that earning such credit allows a defendant the opportunity to exhibit maturity and rehabilitation. The statutory scheme here, which allows for the opportunity of release short of a *de facto* life sentence, is at least on par with discretionary parole for a life sentence, which has specifically been held by the Supreme Court to pass muster under the eighth amendment." *Id*. ¶ 53 (citing *Montgomery v. Louisiana*, 577 U.S. 190, 212 (2016)).

¶ 31   The *Dorsey* court found that good conduct credit "can actually afford *greater* certainty and protection against arbitrariness than a discretionary parole system." (Emphasis in original.) *Id*. ¶ 56. A "defendant is entitled to sentence credit for each day he serves in prison," which "must be awarded and may be revoked only for 'specific rule violations.' " *Id*. ¶ 58 (quoting 730 ILCS 5/3-6-3(c) (West 1994)). A prisoner must "receive advance written notice of the disciplinary charges, an opportunity to call witnesses and present documentary evidence in defense, and a written statement from the disciplinary board of the evidence relied upon and the reasons for the disciplinary action." *Id*. Moreover, these due process requirements of the disciplinary process are subject to administrative and judicial review. *Id*. ¶¶ 59-60.

¶ 32   Lastly, the supreme court in *Dorsey* distinguished its decision in *Buffer*, where the mandatory minimum sentencing scheme provided no opportunity for good conduct credit.

> "Thus, we find that the more-than-40-years mark in *Buffer* is meant to be the line for a d*e facto* life sentence where there is no opportunity to demonstrate rehabilitation and obtain

release short of serving more than 40 years in prison. In other words, a judicially imposed sentence that is more than 40 years but offers day-for-day, good-conduct sentencing credit does not cross the *Buffer* line if it offers the opportunity to demonstrate maturity and obtain release with 40 years or less of incarceration." *Id.* ¶ 63.

¶ 33    We note that our supreme court has not issued its mandate in *Dorsey*. We nonetheless find the logic of *Dorsey* highly persuasive and choose to follow it. Thus, we conclude that we can consider good conduct credit in determining whether defendant received a *de facto* life sentence. His sentence as modified, 60 years' imprisonment subject to day-to-day good conduct credit, is not a *de facto* life sentence because he has a meaningful opportunity to be released from prison well before the 40-year threshold under *Buffer*.

¶ 34                                    IV. CONCLUSION

¶ 35    Accordingly, defendant's sentencing order herein is modified so that his prison terms are 60 years each for two first degree murder offenses, 25 years each for aggravated criminal sexual assault and two armed robbery offenses, and 15 years for aggravated vehicular hijacking, all to be served concurrently. The judgment of the circuit court is otherwise affirmed.

¶ 36    Affirmed as modified.


¶ 37    JUSTICE ODEN JOHNSON, specially concurring:

¶ 38    While I concur that our supreme court's recent disposition in *People v. Dorsey*, 2021 IL 123010 supports the conclusion that defendant's aggregate 60-year sentence was not unconstitutional in light of defendant's youth as he is eligible for day-for-day good conduct credit that provides him a meaningful opportunity for release short of a 40-year *de facto* life sentence, I

nevertheless write separately because I disagree with the overall determination that day-for-day good conduct credit should be given the same weight as a lesser sentence.

¶ 39    In this case as well as in *Dorsey*, defendant was originally sentenced before the truth-in-sentencing statute was validly enacted and therefore remains eligible for day-for-day credit. See *Dorsey*, 2021 IL 123010, ¶ 50. As noted in *Dorsey*, under the day-for-day credit scheme, a defendant "has the opportunity to demonstrate maturity and rehabilitation so that he only needs to serve [half] of his aggregate sentence. *Id.* The supreme court also cited to the statutory provision of the Unified Code of Corrections (Code) which set forth the day-for-day credit sentencing scheme in finding that the statutory scheme mandates that a defendant receive day-for-day credit. *Id*. See 730 ILCS 5/3-3-3(c) (West 1994).

¶ 40    However, day-for-day credit is not guaranteed, and it is the Illinois Department of Corrections, not the circuit court, that has the ultimate discretion as to whether a defendant will be awarded any credit. As noted by the United States Supreme Court in *Pepper v. United States*, 562 U.S. 476, 501 n.14 (2011), "[a]n award of good time credit by the Bureau of Prisons *** does not affect the length of a court-imposed sentence; rather, it is an administrative reward to provide an incentive for prisoners to compl[y] with institutional regulations. [Citation.] Such credit may be revoked at any time before the date of a prisoner's release." (Internal quotation marks omitted.) Thus, I believe that defendant's 60-year sentence cannot be considered anything more than a 60-year sentence because having the "opportunity to demonstrate maturity and rehabilitation" and serve only 30 years of a sentence is not the same as being sentenced to a 30-year prison term. As noted by the *Dorsey* dissent, the appellate court has consistently held that an analysis of whether a defendant's sentence was a de facto life sentence is focused only on the sentence actually imposed. *Dorsey*, 2021 IL 123010, ¶ 93 (Neville, J., dissenting). Accordingly, if it were not for the majority

opinion in *Dorsey*, I would reject the State's argument that defendant's eligibility for day-for-day credit should be considered when analyzing whether defendant's 60 year sentence is a *de facto* life sentence, in accordance with the decisions of the many appellate court panels on this issue and as supported by the Supreme Court's decision in *Pepper*.